PERKINS, Respondent, vs. OWEN, imp., Appellant.

*October 21—November 15, 1904.*

*Executors and administrators: Jurisdiction of county court: Letters of administration: Subsequent discovery of will: Effect on prior administration: Compromise and settlement: Release: Estoppel: Equitable estates: Parol evidence: "Claims."*

1. The jurisdiction of the county court over the settlement of the estate of one who at the time of his death was an inhabitant or resident of the county over which such court exercises jurisdiction, does not depend upon the presence or absence of a will.

2. Where letters of administration are issued on the mistaken idea that no will was left, and a will be afterward found and proved, such letters and all acts of the county court inconsistent with the due administration of the estate under the terms of the will may be revoked; but such action is not taken because the prior proceedings are void for lack of jurisdiction to administer the estate as intestate, but on the ground that they have been erroneous.

3. In such case, in the absence of some controlling intervening fact, the county court should set aside the administration proceedings, unless rights thereunder have become confirmed by virtue of the statute of limitations.

4. One, husband of plaintiff, and son of defendant, died, supposedly having devised his estate to them equally, but no will was found. Thereupon the widow administered the estate, as intestate, and such proceedings were regularly had that a final decree was entered by the proper county court assigning the whole estate to the widow. Thereafter the widow conveyed certain of the real estate to deceased's mother, and, as part of the same transaction, the mother executed a release to the widow "of any and all claims I may have against the estate of my said son and of my claims against" said widow. Both were *sui juris*, had full knowledge of all the necessary facts, of the possibility that a will might be found, and there was no fraud or overreaching. Thereafter a will was found, devising the estate one-half to each, which was duly probated. In an action by the widow to remove such will as a cloud on her title obtained through such settlement, *held:*

(1) The mother was estopped by her release.

(2) The mother, having received the deed in consideration

of relinquishing any claim to the balance of the estate, made a compromise of doubtful claims binding on her.

(3) The release vested in the widow the equitable estate in the remaining lands entitling her to a decree in equity removing the cloud from her title.

5. In such case, parol evidence was admissible to show that the word "claims" in the release referred to the possible claims of the mother under the supposed will afterwards discovered.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is an action in equity to remove a cloud from the title of two parcels of land in the city of Milwaukee. The plaintiff is the widow, and the defendant the mother, of one George B. Owen, who died January 21, 1890, leaving no heirs at law except his widow, the plaintiff. At his death he owned an undivided one-half of three parcels of land in Milwaukee, his brother David G. Owen owning the other half thereof. He also owned the whole of one other tract of land. These lands will be referred to as tracts Nos. 1, 2, 3, and 4, respectively, in this opinion. Tracts Nos. 3 and 4 are the lands which are concerned in this action.

At the time of the death of George B. Owens it was supposed by all concerned that he left a will disposing of his property in equal shares to the plaintiff and the defendant; but no will being found after diligent search, the plaintiff commenced proceedings in the county court of Milwaukee county to administer the estate as an intestate estate, which proceedings progressed in due course and culminated in a final decree assigning the estate to the plaintiff, February 4, 1891. After this decree, and on February 16, 1891, the plaintiff executed, acknowledged, and delivered to. the defendant a quitclaim deed of tracts Nos. 1 and 2 aforesaid, which deed contained the following clause:

"And said *Jane Owen* hereby accepts of this conveyance of said premises in full of any and all claims she may have against the said *Maude A. Owen* or against the estate of George B. Owen, deceased, who was her son."

At the same time, and as part of the same transaction, the defendant executed and delivered to the plaintiff the following release:

"In County Court, Milwaukee County. In Probate. In the Matter of the Estate of George B. Owen, deceased.

"I, *Jane Owen,* mother of said deceased, do hereby, in consideration of the conveyance to me made by *Maude A. Owen,* widow of my said son, of the undivided one-half of lots one (1) and two (2) in Block fifteen (15) Homewood, Town of Wauwatosa, and the undivided one-half of lots eleven (11) and twelve (12) in Block thirty-five (35) Clarke's Addition, Eighth Ward in the city of Milwaukee, county of Milwaukee, Wisconsin, which deed of conveyance is delivered concurrent herewith to me, acknowledge full satisfaction of any and all claims I may have against the estate of my said son and of my claims against said *Maude A. Owen* and do execute this release in consideration of the foregoing and upon the further consideration of love and affection.

"Witness my hand and seal this 16th day of February, A. D. 1891.

"JANE OWEN.    [Seal.]"

On June 20, 1892, the defendant conveyed tract No. 2 to David G. Owen. About June 21, 1900, David G. Owen found the will of George B. Owen, which will, after the payment of debts, devised all of his property to the plaintiff and defendant, share and share alike. It was thereafter duly probated, and David G. Owen appointed executor, and under it the defendant now claims to own an undivided quarter of tract No. 3 and an undivided half of tract No. 4. The plaintiff, by her complaint and by testimony on the trial, claims that the deed and release aforesaid was given in full settlement of all conflicting claims to the real estate of George B. Owen; that it was supposed that there might be a will in existence, and that in order to settle all claims it was agreed that the widow should convey tracts Nos. 3 and 4 to the defendant, and the defendant should release all her claims to any part of the estate, whether the supposed will ever turned

up or not; and hence that the transaction in equity bars the
defendant from claiming any title under the will. The de-
fendant denies that the release was given with any intention
of releasing any rights under the will if a will was found,
and by way of counterclaim she claims title to one-half of the
estate under the will, and offers to reconvey to the plaintiff
all the interest in tracts Nos. 1 and 2 which the plaintiff con-
veyed to her, and prays that the final decree in the adminis-
tration proceedings be set aside, and that she be decreed to be
the owner of one-half of the estate, and that the plaintiff ac-
count.

The court found that the release was given by way of set-
tlement of all claims under the will, if any will was found,
and entered judgment for the plaintiff quieting the title in
her of tracts Nos. 3 and 4, and dismissed the counterclaim,
and from this judgment the defendant appeals.

For the appellant there was a brief by *Miller, Noyes &
Miller,* and oral argument by *Geo. H. Noyes.*

For the respondent there was a brief by *Timlin & Glicks-
man,* and oral argument by *W. L. Gold.*


WINSLOW, J. After carefully reading the evidence, we
find nothing to warrant a reversal of any of the findings of
fact of the trial court. The facts, in brief, are these: Owen
died owning four parcels of land, and leaving his widow as
his sole heir at law. His widow and his mother both supposed
that he left a will dividing the property between them, but,
being unable to find it, the widow finally administered the es-.
tate as though it were intestate, and obtained a final order of
the county court, upon due notice, assigning all of the real
estate to her. Both widow and mother being still uncertain
whether a will might not yet be found, met and agreed that
all claims of the mother as to the property (whether any will
afterwards was found or not) should be adjusted and settled
by the execution of a deed by the widow to the mother of two

of the parcels of land, and the execution of a release by the mother of all claims against the estate and the widow. This settlement was fully carried out, and the will was afterwards found and probated. The question is whether the settlement so made is effective.

The first contention made is that the decree of the probate court assigning the estate is of no effect because the court had no jurisdiction. The argument is that, before a probate court has jurisdiction to administer an estate as intestate estate, the fact that the deceased died *intestate* must exist, and in support of this claim sec. 3806, Stats. 1898, is relied upon, which says:

"When any person shall die *intestate*, being an inhabitant of this state, letters of administration of his estate shall be granted by the county court of the county of which he was an inhabitant at the time of his death."

The contention is that two facts are essential to jurisdiction to grant letters of administration, viz., the fact of death and the fact of intestacy, and if either fact is missing there is no jurisdiction. This court has held that proceedings for the administration of the estate of a person supposed to be dead, but afterwards ascertained to be alive, are absolutely null and void. *Melia v. Simmons,* 45 Wis. 334. It has not been held, however, that the discovery of a valid will renders void for lack of jurisdiction all administration proceedings previously taken, nor do we think it should be so held. The general grant of jurisdiction to the county court is found in sec. 2443, Stats. 1898, which, so far as necessary to be quoted here, is as follows:

"The jurisdiction of the county court shall extend to the probate of wills and granting letters testamentary and of administration on the estates of all persons deceased who were at the time of their decease inhabitants of or residents in the same county."

Briefly stated, this means that the county court has jurisdiction of the settlement of the estates of all deceased inhabit-

ants or residents of the county. It is not necessary to the jurisdiction of the court over the estate that a will should be left, but it is necessary that the supposed deceased should be in fact dead. True, the question whether letters testamentary or letters of administration shall issue depends upon whether there was a will or not, but the jurisdiction of the court over the estate does not depend upon the presence or absence of a will. If letters of administration be issued on the mistaken idea that no will was left, and a will be afterwards found and proven, the letters of administration will of course be revoked, and all acts of the county court inconsistent with the due administration of the estate under the terms of the will will doubtless be revoked upon motion, but such action will not be based on the idea that all such acts have been void for lack of jurisdiction, but rather on the ground that they have been erroneous. The county court has administered the estate in the wrong way; it has not administered an estate over which it had no jurisdiction. This view is supported by authority. *Schluter v. Bowery S. Bank,* 117 N. Y. 125, 22 N. E. 572; *Franklin v. Franklin,* 91 Tenn. 119, 18 S. W. 61. The appellant cites *Chase v. Ross,* 36 Wis. 267, and *Sitzman v. Pacquette,* 13 Wis. 291, as sustaining her proposition, but we have not been able to see wherein these cases are particularly helpful or relevant to the question here. It will be noticed that the statutes of the state (secs. 3815–3817, Stats. 1898) contemplate just such a situation, namely, the situation created by the discovery of a will after the partial administration of the estate as intestate, and these statutes recognize as legal the acts of the administrator done prior to the revocation of his letters, and provide for the continuation of the settlement of the estate from the point at which the administrator leaves it. It seems that these statutes may not have been necessary, but the very fact of their existence is valuable as demonstrating the legislative idea and intention on the subject. We can entertain no doubt, therefore, that the decree in

the administration proceedings was a decree within the juris-
diction of the court to render. It was erroneous because a
will was in fact in existence making a different disposition
of the property, and as soon as that fact came to light the
court should upon application (in the absence of some con-
trolling intervening fact) set it aside, just as it should set
a decree procured by fraud, unless rights thereunder have be-
come confirmed by virtue of the statute of limitations. *Es-
tate of Leavens,* 65 Wis. 440, 27 N. W. 324. Until set aside,
however, the decree was effective upon the parties, because it
was within the jurisdiction of the court, and was rendered
upon due notice to all parties of the application for such de-
cree. *Appeal of Edward Schaeffner,* 41 Wis. 260.

Now, it appears in the present case that after the rendition
of this decree the widow and mother of deceased came to-
gether, and, recognizing the fact that a will might still be dis-
covered giving the mother greater rights, agreed that two par-
cels of land should be conveyed by the widow to the mother,
and a receipt in full of all claims given by the mother, which
was to be a full settlement of any claim on her part, whether
any will should afterwards be found or not, and this arrange-
ment was carried out. The parties were both *sui juris,* and
each had knowledge of all the necessary facts and of the pos-
sibility that the will might yet be found. There was no fraud
or overreaching by either party. There was an intent on
both sides to close the door to any possible claim or litigation
in the future. Such a settlement ought to be sustained if pos-
sible, and we think it possible on familiar and just principles.
If no other principle could be invoked, that of estoppel would
be sufficient under the circumstances of this case. The plaint-
iff deeded to the defendant two parcels of land on the strength
of the release of claim, and since that time has paid and dis-
charged a mortgage of $1,400 upon tract No. 3. Probably,
however, resort to estoppel is not necessary. A compromise
of doubtful rights, where each party acts with knowledge of

the facts and without fraud, is favored in the law, and it will be sustained though it may be unequal or harsh in its operation. *Kercheval v. Doty,* 31 Wis. 476. While the defendant made no deed to the plaintiff of any of her rights in the land, still, when she received a deed to part of the land in consideration of relinquishing any claim to the balance, she doubtless made a binding compromise of doubtful claims, and, though the release so given may not amount to the conveyance of a legal title, it surely vests the equitable estate of the remaining lands in the plaintiff, and entitles her to a decree in equity removing the cloud from her title.

Contention is made that evidence was not admissible to show that the word "claims" in the release referred to the possible claims of the defendant under the supposed will. It was entirely competent to identify the subject-matter intended to be covered by the general word "claims" by evidence showing the circumstances of the transaction. This is not varying or contradicting the terms of the contract, but making certain what subject was covered or intended to be covered by a general word capable of referring to many things.

*By the Court.*—Judgment affirmed.