IN the MATTER OF the REVOCABLE TRUST
OF Elizabeth F. McCOY, Deceased:
WISCONSIN ACADEMY OF SCIENCES,
ARTS & LETTERS, Petitioner-Appellant,

v.

FIRST WISCONSIN NATIONAL BANK OF
MADISON, Respondent.†

Court of Appeals

*No. 86–1381. Argued July 20, 1987.—Decided December 23, 1987.*

(Also reported in 419 N.W.2d 301.)

† Petition to review denied.

For the petitioner-appellant there were briefs by *Earl H. Munson, Howard A. Sweet* and *Thomas H. Taylor,* and *La Follette & Sinykin,* of Madison, and oral argument by *Earl H. Munson.*

For the respondent there was a brief by *James R. Cole, Thomas P. Solheim* and *Annie T. Walljasper,* and *Ross & Stevens, S.C.,* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. The Wisconsin Academy of Sciences, Arts and Letters (Academy) appeals from a judgment dismissing its action to surcharge the First Wisconsin National Bank of Madison (Bank). The issues are: (1) Did the Bank breach its fiduciary duty to Elizabeth McCoy, the settlor of an *inter vivos* trust? (2) If the Bank breached this duty, can the breach be the basis for a cause of action in favor of the Academy? (3) Must the trust document be construed before a cause of action in negligence arises against the bank? Because we conclude: (1) that the Bank breached its duty to McCoy; (2) that the Academy has a cause of action against the Bank for damages resulting from the Bank's negligence toward McCoy; and (3) that a construction of the trust is not a prerequisite to a cause of action against the Bank, we reverse.

In 1967, Elizabeth McCoy established an *inter vivos* trust with the Bank. The trust instrument

provided that on McCoy's death, the trust corpus would go "to the Executor of [McCoy's] will or Administrator of [McCoy's] estate." On June 20, 1977, McCoy, representatives of the Bank and representatives of the Academy met at the Bank. Although there is conflicting testimony regarding what occurred, it is undisputed that McCoy told the Bank's trust officers that she wanted both the trust income during her life and the trust corpus at her death to go to the Academy. On June 23, 1977, McCoy wrote to the Academy's president as follows:

> I take this way of confirming for the record the arrangements you heard at our meeting with trust officers Mark Vitense, and Jan Everson of the First Wisconsin National Bank of Madison.
>
> The plan is for me now to turn over to the Academy the income from my personal trust, #405563500, with the capital of that trust still to remain within my control for my lifetime. Thereafter, it is my intention to have it (or any remainder of it, if by chance I have had to use some part) given to the Academy for endowment purposes. We discussed how the bank may from this point on make certain changes in handling of the approximately $200,000 fund so as to increase income. We also agreed that $1,000 per month be paid to the Academy and payments shall be made by deposit into the Academy cash account during the last of each month. The bank indicated that such payment can begin on June 25, 1977. At the year's end any additional income will be paid to the Academy as a separate item.

The Bank received a copy of this letter in mid-July, put it in McCoy's file, and did not contact her further.

McCoy died intestate in March 1978. Her estate claimed the trust corpus pursuant to the terms of the trust instrument. The Academy, claiming that McCoy's letter gave the corpus to it, petitioned for a construction of the trust. The trial court held that the trust had not been effectively amended. The Academy appealed and we reversed and remanded for further proceedings, concluding that the trust was ambiguous. *In Matter of Estate of McCoy,* No. 80–458 Unpublished slip op. (Wis. Ct. App. Apr. 27, 1981).

On remand, the Academy and the Estate stipulated to an equal division of the trust corpus to avoid litigation over McCoy's intent. The Bank refused to approve the stipulation. The trial court ordered the Bank to distribute the trust corpus as the parties had stipulated. The Bank did so, but appealed. We reversed, holding that the Bank, as trustee, must be a party to an agreement changing the distribution of trust assets under sec. 879.59(1), Stats.[1] *In Matter of Estate of McCoy,* 118 Wis. 2d 128, 345 N.W.2d 519 (Ct. App. 1984). However, while the Bank's appeal was before us, the Academy and the Estate entered into another agreement in which each agreed to share equally in the trust assets, regardless of the outcome of the Bank's appeal.

[1]Section 879.59(1), Stats., provides:

The court may authorize personal representatives and trustees to adjust by compromise any controversy that may arise between different claimants to the estate or property in their hands to which agreement the personal representatives or trustees and all other parties in being who claim an interest in the estate and whose interests are affected by the proposed compromise shall be parties in person or by guardian as hereinafter provided.

On remand, the Academy abandoned its petition for construction of the trust and pursued its amended petition to surcharge the Bank for damages the Academy incurred as a result of the Bank's negligence in allowing the ambiguity regarding McCoy's intent to arise. The Academy claimed a judicial construction of the trust was not necessary for it to prevail on its petition for surcharge. The trial court disagreed and granted the Bank's motion to dismiss the Academy's petition.

A motion to dismiss[2] challenging the sufficiency of the evidence should not be granted if the jury could find for the plaintiff. *Prahl v. Brosamle,* 98 Wis. 2d 130, 133–34, 295 N.W.2d 768, 772 (Ct. App. 1980). We review the evidence in the light most favorable to the plaintiff. *Id.* at 134, 295 N.W.2d at 772.

### BREACH OF DUTY[3]

The existence of a legal duty and the scope of that duty are questions of law. *Ceplina v. South Milwaukee*

---

[2]We treat the trial court's dismissal of the Academy's petition for surcharge as a dismissal for insufficiency of the evidence under sec. 805.14(1), Stats. This is because the trial court considered the construction of the trust a condition precedent to the petition for surcharge. Because the Academy would not pursue a construction of the trust, the trial court determined that any evidence presented in the petition for surcharge would be insufficient as a matter of law.

[3]Because we conclude that a construction of McCoy's trust is not a prerequisite to the Academy's cause of action against the bank, we need not consider whether, on the facts before us, the bank breached its duty to McCoy. However, this case has been pending since 1978, this is the third appeal, and the question is one of law. In the interest of judicial economy, we elect to address this issue rather than remand it to the trial court.

*School Board,* 73 Wis. 2d 338, 341, 243 N.W.2d 183, 185 (1976).

> A trustee occupies a position of peculiar responsibility. A trustee is selected because of confidence in his diligence, prudence, and absolute fidelity, as well as in his ability to so administer the trust as to protect those who, through infancy or other cause, are not able to protect their own interests. The performance of the duties of a trustee requires the exercise of a high degree of fidelity, vigilance, and ability. Especially is this true when the trustee is a company organized for the purpose of caring for trust estates, which holds itself out as possessing a special skill in the performance of the duties of a trustee, and which makes a charge for its services which adequately compensates it for a high degree of fidelity and ability in the administration of a trust estate.

*Estate of Allis,* 191 Wis. 23, 29, 209 N.W. 945, 947, *reh'g denied,* 210 N.W. 418 (1926).[4] "The responsibilities of a trustee require an administration of the trust with the sole object of serving the trust estate and

---

[4]IIA Scott, *The Law of Trusts* sec. 174, p. 471–72 (4th ed. 1987) states:

> A person who induces another to employ him as his agent by representing that he has special knowledge or special skill is held to the standard of skill he represents that he has; and this is true whether he makes the representation specifically to the principal, or holds himself out generally as possessing such skill. There seem to be no cases squarely holding that this principle is applicable to trustees, but there is no apparent reason why it should not be applicable to them. It would seem that where a person makes a business of acting as trustee he may well be held to represent that he has a higher degree of skill than that of the average person. (Footnotes omitted.)

guarding the interests of the beneficiaries." *Estate of Allen,* 218 Wis. 349, 353, 259 N.W. 848, 849 (1935). "If the trustee once accepts the appointment as trustee, [it] is under a duty to administer the trust as long as [it] continues to be trustee." IIA Scott, *The Law of Trusts* sec. 169, p. 310 (4th ed. 1987).[5]

■

The performance of a trustee's duties requires a high degree of vigilance. *Estate of Allis,* 191 Wis. at 29, 209 N.W. at 947. "Vigilance" is defined as "the quality or state of being vigilant: watchfulness in respect of danger or hazard." *Webster's Third New International Dictionary,* 2551 (1976).[6] "Vigilant" is

---

IIA Scott, *The Law of Trusts* sec. 174.1, p. 472 (4th ed. 1987), states:

> If the trustee has greater skill or more facilities than others have he is under a duty to employ such skill and facilities. Moreover, as we have seen, if a trustee has held himself out as having a higher degree of skill or greater facilities than others have, he may incur a liability by failing to come up to the standard he has set. These principles are applicable to trust institutions.

[5] IIA Scott, *The Law of Trusts* sec. 163A, p. 249 (4th ed. 1987), states:

> [With regard to the administration of trusts,] we are concerned primarily with the duties, the powers, and the liabilities of the trustee. Fundamentally, however, these are all different aspects of the same thing. When we say that the trustee has power to do certain things, what is meant is that he is not under a duty to the beneficiary not to do them. Hence, the scope of his powers depends on the scope of his duties. When we speak of the liabilities of a trustee, we are dealing with the consequences of a breach of duty. The trustee does not incur a liability unless he has been guilty of a violation of duty. Hence, the scope of his duties determines the question of his liability.

[6] "The common and approved meaning of a word can be established by reference to a recognized dictionary." *In Interest of B.M.,* 101 Wis. 2d 12, 18, 303 N.W.2d 601, 605 (1981).

defined as "alertly or watchfully awake; *esp:* alert or watchful to discover and avoid danger." *Id.*

Given the Bank's knowledge of McCoy's apparent intent to make the Academy both the income and corpus beneficiary, as revealed at the June 20, 1977 meeting and confirmed in the June 23, 1977 letter, given the language of the trust instrument, which requires an "instrument in writing delivered to the Trustee" to amend the trust, and given the Bank's expertise in trust matters, we conclude the Bank had a duty to at least warn McCoy regarding easily identifiable impediments or pitfalls if her intent was to make the Academy the beneficiary of her trust upon her death, an intent not found in the trust document. Because the Bank did not advise or warn McCoy in this matter, it did not exhibit the degree of alertness or watchfulness it was required to provide as trustee of McCoy's trust. The Bank breached its duty of vigilance to McCoy.[7]

---

[7] A Bank officer testified that he thought the lack of communication between McCoy and the Bank was unusual given a trust of this size. However, when a letter did arrive which indicated an apparent discrepancy between the trust document and the letter, the Bank did nothing. It would seem that a communication such as McCoy's letter was therefore out of the ordinary, another reason why the Bank should have responded to the receipt of this letter.

The Bank argues in its brief that the high standard of fidelity and ability relate only "to the trustee's performance of its duties in terms of protection and management of the trust estate, and in following explicit directions from the settlor." However, since the trust document had the following language: "provided that in the case of amendment, the duties, powers and liabilities of the Trustee shall not be changed without its written consent," we conclude that the Bank had a duty to respond upon the receipt of an "instrument in writing" which purported to amend the trust.

## ACADEMY'S CAUSE OF ACTION

██ A will beneficiary who suffers a loss due to a negligently drafted will may maintain a suit against the negligent attorney. *Auric v. Continental Cas. Co.,* 111 Wis. 2d 507, 509, 331 N.W.2d 325, 327 (1983). "'[P]ublic policy would seem to favor the court's extending its equitable arm to assist innocent parties seeking just damages resulting from an error committed by another and affecting their rights, which error those innocent parties were never themselves able to correct.'" *Id.* at 513, 331 N.W.2d at 328 (citation omitted). Factors to be balanced in deciding whether an attorney should be held accountable to a will beneficiary are: "'the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm.'" *Id.* at 514, 331 N.W.2d at 329 (citation omitted).

Trusts have many of the features found in wills and perform some of the same functions as wills. We conclude that the holding in *Auric* should apply to trusts. Therefore the Academy has a cause of action against the Bank if: (1) the Bank was negligent in fulfilling its fiduciary duties to McCoy and (2) the Bank's negligence was a substantial factor in causing the Academy, as an intended trust beneficiary, to suffer a loss. We have already decided that the Bank

---

Because the trustee reserves veto power over amendments to the trust, such power carries with it the responsibility to respond to apparent attempts to amend the trust.

was negligent in fulfilling its fiduciary duties to McCoy. Whether this negligence was a substantial factor causing a loss to the Academy is a jury question.

## CONSTRUCTION NECESSARY?

In *Gustavson v. O'Brien,* 87 Wis. 2d 193, 198, 274 N.W.2d 627, 630 (1979), the court said:

> On appeal, the appellant contends that a judicial determination of whether the respondents had an insurable interest in the property is essential to a determination of whether the damages sustained by the respondents are the causal result of the negligence of the appellant. *In our view the issue resolves itself to whether the evidence was sufficient, in the absence of a judicial determination of insurable interest, to support a finding that the negligence of the appellant was a substantial factor in causing the damages sustained by the respondents.* (Emphasis added.)

In *Gustavson,* 87 Wis. 2d at 196, 274 N.W.2d at 629, the respondents had asked an attorney to transfer their land contract interest in a restaurant to a corporation. The attorney failed to do so. The corporation insured the restaurant, which subsequently burned. *Id.* The insurers denied coverage because the corporation did not have an insurable interest in the restaurant. *Id.* at 197, 274 N.W.2d at 629. The respondents sued the insurers on the insurance contracts and the attorney for negligence. Before trial, the respondents and the insurers settled for less than policy limits. The respondents then continued the suit against the attorney, and were awarded damages.

On appeal, the attorney argued that he was not responsible for the deficiency resulting from the

respondents' willingness to settle for less than the face value of the policy. The court rejected this argument, noting that in situations where the outcome on issues is unclear, clients should be allowed to settle in good faith and not litigate to judgment. *Gustavson,* 87 Wis. 2d at 201, 274 N.W.2d at 631. Further, a client does not waive his or her rights against a negligent lawyer by making a good faith settlement after extended litigation. *Id.* at 203, 274 N.W.2d at 632. "The question is whether [the lawyer's] negligence forced the respondents to engage in litigation they otherwise would not have had to engage in." *Id.* The court concluded that the legal expenses incurred in the respondents' suit against the insurers and the difference between the settlement and the face value of the policy were losses attributable to the attorney's negligence and were properly assessed against him. *Id.*

The Bank attempts to distinguish *Gustavson* on a number of grounds.[8] The Bank argues that the clarity in the causal link between the attorney's negligence in *Gustavson* and the plaintiff's damages cannot be found in this case. However, the question of causation, whether clear or unclear, is for the jury. *Fondell v. Lucky Stores, Inc.,* 85 Wis. 2d 220, 230, 270 N.W.2d 205, 211 (1978).

The Bank then argues that the Academy cannot use its settlement agreement with the Estate as a measure of damages because of "the law of the case."[9]

[8]The Bank argues that the trial court found the attorney in *Gustavson* negligent as a matter of law, and that there can be no such determination in this case. However, we have already concluded that the Bank was negligent as a matter of law based on the undisputed facts of this case.

[9]The cases cited by the Academy support the validity of the Academy's subsequent agreement with the Estate. *See Estate of*

We reject the Bank's analysis. While sec. 879.59(1), Stats., prohibits a court from honoring an agreement to distribute trust assets contrary to the settlor's intent unless "trustees and all other parties ... whose interests are affected ..." are parties to that agreement, that is not the case here. The agreement at issue was not before the court of appeals in *In Matter of Estate of McCoy,* 118 Wis. 2d 128, 345 N.W.2d 519 (Ct. App. 1984), and the agreement does not require

*Sipchen,* 180 Wis. 504, 512, 193 N.W. 385, 388 (1923) (parties interested in an estate have a right, even before final distribution, to dispose of their interests by contract; such contract can be given legal effect in a court action, although the contract does not affect the distribution of the estate in accordance with the will); *Estate of North,* 242 Wis. 72, 76, 7 N.W.2d 705, 707 (1943) (beneficiary of a trust whose rights are vested may convey an equitable interest in trust property); *Perkins v. Owen,* 123 Wis. 238, 244–45, 101 N.W. 415, 417 (1904) (a compromise of doubtful rights is favored in the law); *McKeigue v. Chicago & N.W.R. Co.,* 130 Wis. 543, 547, 110 N.W. 384, 385–86 (1907) (administrator of an estate may not prosecute a claim, which was settled by the sole beneficiary of the estate, for the sole benefit of the person who received and retains the full amount paid in settlement). IIA Scott, *The Law of Trusts* sec. 132, p. 8 (4th ed. 1987), states:

> The beneficiary of a trust can transfer his interest whether it is a present or future interest, and whether it is a vested or contingent interest. A contingent future interest under an existing trust, however, is to be distinguished from a mere expectancy. As we have seen, a person who has merely an expectation that he may inherit property on the death of a relative, or that he may take as devisee or legatee under a will of a testator who is still living, has not an interest that he can assign, although he may make a contract to assign it. Where a trust has been created, however, a beneficiary has a property interest even though his interest is contingent. Whether his interest can be reached by his creditors involves a question of policy that we shall consider hereafter. The beneficiary, at any rate, has an interest that he can assign. (Footnotes omitted.)

the trial court to distribute the trust assets contrary to the terms of the trust instrument. If it is determined that negligence on the part of the Bank was a substantial factor in causing the uncertainty that led to this agreement, the Academy may use the settlement agreement as a measure of damages.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.