MASON SHOE MANUFACTURING COMPANY, Plaintiff-Respondent,†

v.

FIRSTAR BANK EAU CLAIRE, NA, as Trustee of the Victor T. Mason Revocable Trust Dated October 1, 1993, and Bernice Mason, Defendants-Co-Appellants,

Richard MASON and Thomas Mason, Defendants-Appellants.

Bernice M. MASON, Plaintiff,

Thomas J. MASON and Richard P. Mason, Plaintiffs-Appellants,

v.

John A. LUBS, Jane M. Lubs, William M. Scobie, Rosemary M. Scobie, Robert J. Allen, Paul B. Mason, Jr., David E. Frasch and Mason Shoe Manufacturing Company, Defendants-Respondents.

FIRSTAR BANK EAU CLAIRE, NA, Estate of Victor T. Mason and Mason Revocable Grantor Trust, Plaintiffs-Appellants,

v.

MASON SHOE MANUFACTURING COMPANY, John A. Lubs, Jane M. Lubs, William M. Scobie, Rosemary M.

---

†Petition to review granted.

Scobie, Paul B. Mason, Jr. and David E. Frasch,
Defendants-Respondents.

Court of Appeals

*No. 97–2053. Submitted on briefs December 22,
1997.—Decided March 13, 1998.*

(Also reported in 579 N.W.2d 789.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Edward S. Marion* and *Richard W. Pitzner* of *Murphy & Desmond, S.C.* of Madison.

On behalf of the defendant-co-appellant Firstar Bank, the cause was submitted on the briefs of *C. Vernon Howard, Jr.* and *James F. Gebhart* of *Stroud, Stroud, Willink, Thompson & Howard* of Madison.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Alan I. Silver* and *Karen D. Olson* of *Doherty, Rumble & Butler, P.A.* of Minneapolis; *Eric J. Magnuson, Richard J. Nygaard* and *William P. Wassweiler* of *Rider, Bennett, Egan & Arundel, LLP* of Minneapolis; and *Steven R. Cray* of *Wiley, Wahl, Colbert, Norseng, Cray & Herrell, S.C.* of Chippewa Falls.

Before Cane, P.J., Myse and Hoover, JJ.

HOOVER, J. Bernice, Thomas and Richard Mason, and Firstar Bank Eau Claire, N.A., personal representative of Victor Mason's estate, appeal a summary judgment dismissing their claims against the Mason Shoe Manufacturing Company and John Lubs, Jane Lubs, William Scobie, Rosemary Scobie, Robert Allen, Paul Mason, Jr., and David Frasch, the company's officers and directors. The appellants contend that the issuance of 4,000 shares of Class A common stock was not authorized under § 180.0601(1), STATS. They also assert that the trial court erred by granting summary judgment on the grounds that the 4,000 shares issued by the officers and directors to John Lubs

were subject to preemptive rights, the issuance of the shares breached a fiduciary duty owed by the company officers and directors, and breached the fiduciary duty owed to the trust beneficiaries by the J. Owen Mason Trusts trustees. We conclude that the contested shares were not authorized under § 180.0601(1). Therefore, their issuance is null and void. However, because a question of fact remains whether the trustees breached their fiduciary duty, and the determination whether the trustees are entitled to costs depends on resolution of that fact, we must remand for a determination of that sole issue. Accordingly, we reverse the summary judgment and remand for further proceedings.

The company was founded in 1904 as a closely-held family corporation. Victor Mason ran the company for years as its president, remaining a director and officer after retirement and until his death in October 1993. At the time the contested stock was issued, the company had authorized and issued two classes of stock: Class A voting stock and Class B non-voting stock. Victor and his family owned the bulk of these shares, while his sister, Rosemary Mason Scobie, and her family also owned a substantial number of shares. Several trusts also held shares for certain of Victor's and Rosemary's children.[1] After distribution of the trusts, Victor Mason and his sons, Richard and Thomas, would control a 54.9% majority in the company. The Scobie family would own 38.43% of the voting stock.

Victor's son-in-law, John Lubs, having begun as a warehouse custodian, became president of the company in 1991, a position he held two years later when the contested shares were issued. Victor's son, Richard,

---

[1] In addition, 328 shares were held by a non-family group.

worked at the company for several years, beginning in 1986. During that time, he clashed with Lubs and William Scobie, chairman of the board of directors. After attempts to work out their differences failed, Richard left the company in 1989. He vowed he would get even with Lubs.

In March of 1993, Victor and his wife, Bernice, prepared new wills. When Lubs learned this, he spoke with Scobie. Lubs was concerned that the new wills might have given Richard or Bernice the power to vote Victor's shares and thereby control the company.[2] Lubs feared he and Scobie would be replaced if either Richard or Bernice could vote the shares. After unsuccessfully attempting to learn what Victor had provided in his will, Lubs and Scobie discussed issuing a third block of stock. Lubs did not suggest that the stock be issued to him; however, in September 1993, Scobie initiated the sale to Lubs. Scobie notified the company's directors that the board would hold a special meeting and that the agenda was the sale of 4,000 shares of Class A stock to Lubs. Apart from three directors in attendance who held Class A shares, the other twenty Class A shareholders were not notified of the directors' meeting. Victor did not attend or participate in the meeting.

The board adopted a resolution authorizing the issuance of 4,000 Class A shares to Lubs. The company and Lubs executed a stock purchase agreement, and Lubs executed a promissory note in exchange for the

---

[2] This concern, we note, is inconsistent with their contention that Victor agreed to the Lubs stock issuance in order to assure that Richard could not gain controlling interest in the company. In fact, Victor's new will created a trust in which Firstar would vote the shares after consulting with Richard, or Firstar could grant its proxy to Richard.

stock. The agreement provided that Lubs "shall not sell, give, assign or otherwise transfer" his shares without offering the company the right to purchase the shares. It further stated that should Lubs leave the company for any reason, or upon death, the company had the right to redeem the shares. In addition, the agreement prohibited Lubs from pledging, mortgaging or encumbering all or part of the stock.

This case involves three consolidated actions arising from the issuance to Lubs of the 4,000 shares of stock. First, the company sought a declaratory judgment that the issuance of the shares did not violate the preemptive rights of Victor, his wife or sons, and did not constitute a breach of its directors' fiduciary duty to the shareholders. Victor's wife, Bernice, and her sons, Richard and Thomas, filed a suit seeking to cancel the shares issued to Lubs or to recover damages. Finally, Firstar, acting as personal representative of Victor's estate, asserted that the issuance of the shares violated Victor's preemptive rights as a shareholder of the company and constituted a breach of the company directors' fiduciary duty to him. Firstar and the Masons moved for summary judgment on the preemptive rights issue and on the grounds that the shares were not authorized to be issued under § 180.0601(1), STATS. The company moved for summary judgment on both the preemptive right and fiduciary issues.[3] The

---

[3] Our holding on the narrowest issue, whether the shares were authorized under § 180.0601(1), STATS., is dispositive and therefore we do not reach the questions whether the stock issue violated Victor's and the Masons' preemptive rights and whether the corporate officers breached their fiduciary duty. If we decide a case on one issue, we need not address others. *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). An appellate court should decide cases on the narrowest

trial court granted the company's motion and denied Firstar's and the Masons' motion.

## AUTHORIZATION OF SHARES

Firstar contends that the Class A shares issued to Lubs were void in that the limitations placed upon those shares are not prescribed in the company's articles of incorporation. The company's articles of incorporation authorize it to issue only Class A and Class B shares of stock. The articles provide that "Class B common stock shall be identical with Class A common stock in all respects except that Class B common stock shall not have any voting rights." The limitations imposed on the shares issued to Lubs were typed as a legend on the reverse side of the stock certificate issued to him. The company admits that "the restrictions placed on the sale of Class A shares to Lubs were far more onerous than those applicable to the issuance of all other outstanding Class A shares." These restrictions were that Lubs could not give his shares to anyone or pledge them as collateral. His ownership of the shares was conditioned upon his employment with the company; he was subject to losing his shares if he died or ceased working with the company. According to Scobie, the latter limitation was imposed so that if Lubs ever acted contrary to the wishes of management, he could be terminated and his stock would go back to the company. Further, if Lubs left the company's employment and the company considered exercising its right to redeem the shares, Lubs agreed, according to language appearing on his stock, "that he or his estate shall vote, if necessary, in accordance with the direc-

---

possible grounds. *State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44, 46 (1997).

tions of the chairman of the Board of Directors of the Company . . . ."

The company contends that the shares issued to Lubs have the same rights and preferences as all other Class A shares. It argues that Lubs has the same voting rights, duty to honor the company's right of first refusal, and the same rights to dividends or distributions as any other Class A shareholder. It further asserts that the existing differences are that Lubs can only own his stock while employed by the company and that he may not transfer his stock to anyone without prior consent. These, it contends, are common, permissible transfer restrictions. As limitations placed upon the stockholder by individual agreement, the company argues that these restrictions do not alter the underlying rights and preferences of the stock itself. The trial court did not address the issue except to say that the limitations were permissible transfer restrictions under § 180.0627(4), STATS., the section outlining restrictions on transfer of shares and other securities, and that the limitations did not create a separate class of stock.

Whether the conditions unique to Lubs's stock rendered the issuance void presents a question of statutory interpretation we review de novo. *State v. Michels*, 141 Wis. 2d 81, 87, 414 N.W.2d 311, 313 (Ct. App. 1987). Section 180.0601(1), STATS., provides that limitations must be set forth in the articles of incorporation:

> The articles of incorporation shall prescribe the classes of shares and the number of shares of each class that the corporation is authorized to issue, except that an investment company may prescribe that each class has an indefinite number of authorized shares. If more than one class of shares is

> authorized, the articles of incorporation shall prescribe a distinguishing designation for each class. *Before the issuance of shares of a class, the corporation shall describe in its articles of incorporation the preferences, limitations and relative rights of that class. All shares of a class shall have preferences, limitations and relative rights identical with those of other shares of the same class unless the class is divided into series.* (Emphasis added.)

Two statutes, however, discuss limited permissible restrictions on transfers of shares that it appears do not necessarily have to be described in the articles of incorporation. Section 180.0621(5), STATS., permits transfer restrictions when shares are issued for a contract for future services or benefits or a promissory note. Section 180.0627, STATS., discusses purposes for restricting transfer of shares and other securities as well as various forms of agreements necessary to establish such restrictions. Section 180.0627(2)(a) provides that, subject to a limitation in (2)(b), transfer restrictions may be imposed by the articles of incorporation, bylaws, an agreement among shareholders and holders of other securities, or an agreement between shareholders and holders of other securities and the corporation for any reasonable purpose.

The certificate issued to Lubs sets forth the condition that if he left the company's employment and the company took a vote to decide whether to exercise its purchase option, Lubs would vote, if necessary, in accordance with the directions of the chairman of the board. If this is a transfer restriction, it need not appear in the articles of incorporation in order to be valid. The company, however, offers no authority or argument demonstrating that this provision is in the nature of a restriction on his right to transfer his stock.

For that matter, it fails to show why the precise limitations that prohibit Lubs from transferring or encumbering the stock and only owning the stock while employed by the company are reasonable or are common, valid transfer restrictions. Particularly, we fail to see how the restriction that Lubs only own the stock while employed by the company, supported by Scobie's admission that Lubs could be terminated if he acted in contravention to the wishes of management, is the type of restriction on transfer contemplated by statute.[4]

[4] Section 180.0627(4), Stats., discusses permissible transfer restrictions. It reads:

> (4)　The transfer restrictions permitted under this section include, but are not limited to, transfer restrictions that do any of the following.
>
> (a)　Obligate the shareholder or holder of other securities first to offer the corporation or other persons, whether separately, consecutively or simultaneously, an opportunity to acquire the restricted shares or other securities.
>
> (b)　Obligate the corporation or other persons, whether separately, consecutively or simultaneously, to acquire the restricted shares or other securities.
>
> (c)　Require the corporation, the holders of any class of its shares or other securities or another person to approve the transfer of the restricted shares or other securities, if the requirement is not manifestly unreasonable.
>
> (d)　Prohibit the transfer of the restricted shares or other securities to designated persons or classes of persons, if the prohibition is not manifestly unreasonable.

While we recognize that permissible transfer restrictions are not limited to those expressly discussed in § 180.0627(4), Stats., the company fails to demonstrate how the nature of the restrictions that Lubs only own the stock while employed by the company and that he vote in accordance with the desires of the chairman of the board when deciding to exercise its purchase option are similar in nature to the permissible transfer restrictions delineated above. We conclude that the character of the

Rather, the more direct effect of this restriction is upon Lubs's ownership of the stock, not his ability to transfer it. Thus, this restriction goes beyond those limited permissible transfer restrictions in §§ 180.0621(5) and 180.0627, STATS. While we accept the company's argument that restrictions may attach to the shareholder rather than the share, we conclude this exists only within limited, statutorily permitted areas of individual negotiation, such as permissible transfer restrictions and buy/sell agreements.

The provision in question potentially restricts Lubs's freedom to vote in a manner inconsistent with the board of directors. As such, it is a limitation both on his voting rights and the full enjoyment of ownership. More importantly, it is a limitation on voting rights unique to the shares issued to him; no other prior issuance of Class A stock so restricts shareholders' voting rights. Further, this limitation is not set forth in the articles of incorporation. While the articles provide the company with the right of first refusal, they do not specify that the stockholder must agree to vote, if necessary, in accordance with the directions of the chairman of the board when deciding whether to exercise the company's purchase option. Yet, a limitation on one's relative rights must be set forth in the articles of incorporation and made equally applicable to all Class A stock. Section 180.0601(1), STATS.

The preferences, limitations and relative rights of Lubs's shares are not identical to other Class A shares as required by § 180.0601, STATS. Further, because the restrictions that Lubs may only own the stock while employed by the company and may have to vote as

restrictions upon Lubs's shares goes beyond that of permissible transfer restrictions.

directed by the board chairman are limitations not described in the articles of incorporation, the shares are unauthorized for issuance under § 180.0601 and therefore null and void. *See* 11 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 5123 (perm. ed. rev. vol. 1995).

## FIDUCIARY DUTY OF THE J. OWEN MASON TRUSTS TRUSTEES

We address this fiduciary issue because it is relevant to the next issue we discuss, whether the trustees are entitled to costs incurred in performance of their roles. Appellants argue that William Scobie, Robert Allen, and Paul Mason, Jr., breached their fiduciary duty as trustees of the J. Owen Mason Trusts. The J. Owen Trusts held 3,111 Class A shares in trust for Richard and Thomas Mason. The trustees therefore held a fiduciary duty to Richard and Thomas in addition to the fiduciary duty owed to them as directors and officers of the company. The company contends that the trustees' duty is to act in the interest of the beneficiaries, but not necessarily to act as the beneficiaries may desire. It contends it was in the best interests of the company to retain Lubs, and that by acting in concert with this interest, the trustees did not breach their fiduciary duty to the beneficiaries.

"The responsibilities of a trustee require an administration of the trust with the sole object of reserving the trust estate and guarding the interests of the beneficiaries." *In re Revocable Trust of McCoy*, 142 Wis. 2d 750, 755–56, 419 N.W.2d 301, 304 (Ct. App. 1987) (quoting *In re Estate v. Allen*, 218 Wis. 349, 353, 259 N.W. 848, 849 (1935)). Where a trustee demonstrates an open, avowed hostility toward a beneficiary,

the trustee should be removed. *See Laughlin v. Griswold*, 179 Wis. 56, 59, 190 N.W. 899, 900 (1922).

We conclude that factual ambiguities remain whether the trustees purposefully acted against the beneficiaries' interests by diluting the value of their stock. While there is a reasonable inference that the trustees breached their fiduciary duty, we are unwilling to say as a matter of law they did so. Whether they acted purposefully out of self-interest and against their beneficiaries' interest is an issue of fact. Further, whether retaining Lubs and other management was in the best interests of the company and the beneficiaries presents factual issues. We finally conclude that whether the trustees acted only out of hostility toward Richard and Thomas, and not otherwise in the best interests of the beneficiaries, is also a factual issue.

## TRUSTEES' COSTS

The trial court removed William Scobie and Paul Mason, Jr., as trustees "because of a patent conflict of interest by reason of their being adverse in interest to Richard and Thomas Mason as a result of the legal action over the issuance of the stock to John Lubs initiated by the two trust beneficiaries, Richard and Thomas Mason."[5] Thus, the court concluded that the lawsuit formed the basis of a conflict of interest. The court awarded the removed trustees $10,299.90 as partial compensation for legal fees incurred.

Appellants argue that the trustees are not entitled to compensation because they had a conflict of interest with the beneficiaries and the trustees acted in bad faith. They point to *In re Estate of Martin*, 39 Wis. 2d

---

[5] Another trustee, Robert Allen, resigned in January 1996.

437, 159 N.W.2d 660 (1968), which states when a trustee is not entitled to compensation:

> [A] sum is allotted for an execution of the trust with the highest degree of good faith and with ordinary skill and care. It follows that if the administration of any particular trustee falls below this level, his compensation should be reduced or even forfeited entirely.

*Id.* at 444, 159 N.W.2d at 663 (quoting BOGERT, TRUSTS & TRUSTEES 2d § 980 at 404). The trial court, relying on *In re Estate of Gehl*, 5 Wis. 2d 91, 92 N.W.2d 372 (1958), held that the trustees were entitled to compensation. It concluded that under *Gehl*, a trustee could not be removed for a conflict of interest where the testator creates that conflict, but only for mismanagement. The court concluded that because the grantor of the trusts, J. Owen Mason, intended there to be a conflict of interest and the trustees were not removed for mismanagement, the trustees were entitled to costs of $10,299.90. Appellants contend that *Gehl* is distinguishable because the trustees purposefully acted against the beneficiaries' interests. They further dispute that J. Owen Mason intended there to be a conflict of interest.

As previously discussed, a genuine issue of material fact remains whether the trustees breached their fiduciary duty by purposefully acting against their beneficiaries' interests by diluting the value of their stock. Even though the trial court determined that the trustees had a conflict of interest, the court based this finding on the institution of the legal action between the trustees and the beneficiaries, not mismanagement of the trust. The presence of this conflict of interest is not dispositive that the trustees acted in bad faith or

against the interests of the beneficiaries. Whether the trustees breached their fiduciary duty and whether J. Owen Mason intended there to be a conflict of interest between the trustees and beneficiaries are jury issues. Thus, while we decide the case by our holding that the issuance of the shares was null and void, we must remand for a determination as to the remaining issue of fact, whether the trustees breached their fiduciary duty and are thus not entitled to costs as trustees.

*By the Court.*—Judgment reversed and cause remanded with directions.