Saros, Plaintiff and Respondent, vs. Carlson and others, Defendants: Chell and wife, Defendants and Appellants.*

*October 12—November 9, 1943.*

* Motion for rehearing denied, without costs, on January 18, 1944.

86

*Morris E. Yager* of Frederic, for the appellants.

For the respondent there was a brief by *Nelton & McGinnis* of Balsam Lake, and oral argument by *Joseph L. McGinnis.*

FAIRCHILD, J.  There can be no question but that the relation of trustee and *cestui que trustent* existed between C. A. Carlson and his children until he accounted as trustee and was discharged a few weeks after LeRoy arrived at the age when he was entitled to claim his share of the trust estate.

". . . Where the trustee is authorized to sell trust property for the purpose of distributing the proceeds on the termination of the trust, he is empowered to sell the property after the time for the termination of the trust has arrived."  3 Scott, Trusts, p. 1891, sec. 344.

It was during that period of time between LeRoy's becoming twenty-four (April 2, 1940) and the trustee's discharge

(May 13, 1940) that the sales agreement with respondent was entered into. However, the quality of the trustee's then existing power, as a point in this litigation, loses some of its importance because of the circumstances surrounding the signing of the agreement to sell and the execution of instruments thereafter, under and by which the former *cestui que trustent,* then of full age and possessing the right to contract for themselves, either joined in or ratified the transaction carried on by the trustee and respondent.

There is no claim by LeRoy or Elsie of negligence or other failure on the part of the trustee in the conduct of the affairs of the trust in this action, nor is there by appellants, as successors in title to LeRoy and Elsie Carlson, although appellants Chell are insisting that the relation of trustee and *cestui* terminated when the Carlson children reached the age of twenty-four years. But it is evident that at that time there was no accounting by the trustee and no order discharging him.

It is a trustee's paramount duty to preserve the estate and to comply with the terms of the trust. The failure to make an earlier sale of this particular piece of real estate as directed by the creator of the trust may be accounted for without any undue reflection on the promptness of the trustee in responding to the wishes of the testatrix. The delay doubtless was due to lack of opportunity to sell until respondent made his offer. For aught that appears in this record, when the children reached the age of twenty-four they might have insisted on an accounting or compelled the conveyance of the land to themselves. However, both showed satisfaction with what had been done up to that time, and in this particular transaction LeRoy joined with his father, the trustee, in making the bargain with respondent, and Elsie ratified it by executing her deed.

A subsequent ratification relates back to the time of the original transaction. And a ratification once deliberately made, upon full knowledge of all the material facts, becomes at once obligatory and cannot afterwards be revoked or recalled. There is a suggestion of a want of evidence that Elsie was fully advised when she signed the deed. She was not present when her brother and her father made the original agreement with respondent but her signing of the deed to carry out and complete the transaction is evidence of information concerning the affair. She knew the terms of the will. She is presumed to know she had rights that were being parted with, she must have known she was joining in a deed conveying this land that was the subject of the original agreement with respondent. What was it she did not know about? If anything was kept from her what could it have been? The inference drawn by the trial court, from the facts proven, was that she understood the whole matter, ratified it, and acted in accordance with the agreement. Until she learned that appellant, Chell, desired to purchase the land, her actions were consistent with the ratification of the plan to sell to respondent. Mr. Madsen testified that he was told by one of the appellants that "Elsie felt that the property should go to Mr. Chell and she was not willing to execute the warranty deed." The trial court decided that the agreement signed by C. A. Carlson and LeRoy Carlson and ratified by Elsie Carlson was valid and binding upon the parties. And with that conclusion we agree.

The rule is that when a vendor, after entering into a contract of sale, conveys the land to a third person who has knowledge or notice of the prior agreement, such third person is not a *bona fide* purchaser, and as said by Mr. Pomeroy in his work on Specific Performance of Contracts (3d ed.), p. 946, sec. 465: "Such grantee takes the land impressed with the trust in favor of the original vendee, and holds it as trustee for such vendee, and can be compelled at the suit of the vendee

to specifically perform the agreement by conveying the land in the same manner, and to the same extent, as the vendor would have been liable to do, had he not transferred the legal title."

With reference to the claim that appellants were *bona fide* purchasers because without notice of the sale, and therefore have a right to the land superior to that of the respondent, it appears that appellants had both actual and constructive notice of the interest and rights of respondent. The conversations occurring before appellants made their purchase in which respondent made known to Chell his agreement with the Carlsons, together with the *lis pendens* on file in the office of the register of deeds of Polk county, involving the right to the title to this very land, sustain the findings and conclusion on that point and take appellants out of the class of innocent or *bona fide* purchasers.

There is also a finding that appellants have caused damage to the premises by removing a milkshed, and that the respondent is entitled to a credit on that account of $30. We are of the opinion that that finding is also sustained by the evidence.

Upon the argument, respondent by his attorney expressed his willingness to accept a conveyance from appellants that would carry the title acquired from the Carlsons by appellants over to respondent. That offer was made to meet the objection raised to language in the judgment using the term "warranty deed." The judgment below will be corrected by substituting for the words "warranty deed," the words "by a deed containing the usual covenants against acts of appellants." The order entered below is to be modified to require that the deed to respondent be a good and sufficient deed with the usual covenants of warranty against acts of appellants only, and, as modified, affirmed.

*By the Court.*—Judgment, as corrected, affirmed. Respondent to have his costs.