Susan HATLEBERG, Plaintiff-Respondent,

v.

NORWEST BANK WISCONSIN, n/k/a Wells Fargo Bank,
Defendants-Appellants.†

Court of Appeals

*No. 03–0040. Submitted on briefs November 3, 2003.—Decided
February 24, 2004.*

2004 WI App 48

(Also reported in 678 N.W.2d 302.)

**RESEARCH REFERENCES**

† Petition to review granted 8-2-04.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Dennis M. Sullivan* and *Herrick, Hart, Duchemin, Spaeth, Sullivan & Schumacher, S.C.* of Eau Claire.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Paul J. Gossens, S.C.* of Wauwatosa.

Before Cane, C.J., Hoover, P.J., and Schudson, J.

¶ 1. HOOVER, P.J. Wells Fargo Bank appeals a judgment for damages for breaching its fiduciary duty while managing an irrevocable trust set up by Phyllis Erickson.[1] Because of an error in the trust document, Erickson's contributions were included in her estate at her death, requiring the estate to pay nearly $174,000 in additional taxes. Wells Fargo alleges several errors, primarily that it had no duty to notify Erickson of the error in the trust document. We disagree with all of Wells Fargo's contentions and affirm the judgment.

## Background

¶ 2. Dale Sevig was the senior trust officer for Wells Fargo,[2] which has previously been known by other names. Sevig contacted Erickson's husband, Ted, in September 1984 "to hopefully help you with your estate and investment planning." Sevig represented that he had knowledge on avoiding estate taxes and recommended a plan to Ted that would help reduce those taxes. Before Ted could finalize anything, he died in March 1985. Sevig then wrote to Erickson to express his condolences and to suggest he could help Erickson finish the estate planning Ted had started.

---

[1] Susan Hatleberg is Erickson's daughter and personal representative of Erickson's estate.

[2] "Wells Fargo" refers to the bank, its predecessors in interest, and Sevig working on the bank's behalf.

¶ 3. Sevig recommended an irrevocable trust that would take advantage of an annual gift exclusion of $10,000 per recipient[3] to reduce Erickson's eventual estate tax. He recommended an attorney from an office in the bank's building to draft the trust document, but Erickson insisted on having her neighbor, Richard Duplessie, draft the document. Sevig knew Duplessie was a lawyer, but also that he was not an expert on trusts.

¶ 4. Duplessie drafted the trust document, apparently modeling it after one in a form book in his office. While the trust was intended to be one way for Erickson to reduce her estate tax burden,[4] it needed to provide the recipients with a present interest in Erickson's gift for the money to qualify for the tax exemption. *See* 26 U.S.C. § 2503(b)(1) (2002).[5] This is normally accomplished through *Crummey* provisions included in the trust, although Erickson's trust contained no such

---

[3] The annual gift exclusion was $10,000 at all relevant times. Sevig also recommended a revocable trust that was used to manage Erickson's personal finances, but no issue regarding that trust is before us.

[4] There was evidence that Erickson wanted the trust to fund her grandchildren's education and therefore she did not want them to have immediate access to the trust account. Thus, Wells Fargo contends the trial court erred by concluding that reducing estate taxes was Erickson's primary goal. However, delaying the beneficiaries' access is incompatible with reducing estate taxes, which is what Wells Fargo stated the trust could be used for. The trial court's conclusion was a factual determination based on more than ample evidence in the record. *See* Wis. Stat. § 805.17(2). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[5] 26 U.S.C. § 2503(b)(1) (2002) reads in relevant part: "In the case of gifts (*other than gifts of future interests in property*) made to any person by the donor during the calendar year, the

language. *See Crummey v. Commissioner of Internal Revenue*, 397 F.2d 82 (9th Cir. 1968).[6]

¶ 5. Erickson began contributing to the trust in 1985 and, by the time of her death in 1998, she had deposited a total of $440,000. In 1988, however, Wells Fargo became concerned by the trust's lack of *Crummey* provisions. Sevig sent a letter to Duplessie, containing potential *Crummey* language and asking Duplessie to modify the trust if possible. Sevig never contacted Erickson or her beneficiaries about the potential problem. Duplessie believed the trust had already been completely funded—that Erickson was not making additional deposits—and therefore no changes could be made. The trust was never amended.

¶ 6. Sevig continued managing Erickson's finances and continued advising her to contribute to the trust, reiterating her gifts to her grandchildren would also be beneficial for estate tax purposes. At one point after 1988, he advised Hatleberg that there was nothing

---

first $10,000 of such gifts to such person shall not . . . be included in the total amount of gifts made during the year." (Emphasis added.)

[6] In *Crummey v. Commissioner of Internal Revenue*, 397 F.2d 82 (9th Cir. 1968), the court discussed the present interest requirement of 26 U.S.C. § 2503(b)(1). It concluded that in order to create a present interest in a gift, "all that is necessary is to find that the [beneficiary's] demand [for distribution of the corpus] could not be resisted. We interpret that to mean legally resisted . . . ." *Id.* at 88. Thus, a "*Crummey* provision" is wording used to effectuate the beneficiary's present interest in a gift. Beneficiaries are sometimes sent *Crummey* notices. A notice identifies the beneficiary's present interest and right to make a demand even if the provision has been omitted from the trust document. There was apparently a dispute over whether Erickson's grandchildren had received notices, but the issue is not discussed on appeal.

to worry about as far as her mother's trust was concerned. When Erickson died in September 1998, however, Sevig contacted the probate attorney advising that the lack of *Crummey* provisions in the trust caused him concern about Erickson's estate. Because there were no *Crummey* provisions, Erickson's estate had to recapture the $440,000 in gifts. As a result, the estate paid an additional $173,644 in taxes.

¶ 7. Hatleberg sued Duplessie, his law firm, Sevig, and Wells Fargo. Hatleberg settled with Duplessie. Following a bench trial, the court found against Wells Fargo. Wells Fargo moved for reconsideration to have liability apportioned. The court determined that Duplessie's law firm was 0% liable, the estate's accounting firm was 0% liable,[7] Wells Fargo was 60% liable, and Duplessie was 40% liable.

¶ 8. An accountant testified that $300,993 would be needed to make the estate whole. This amount, when added to the estate, would be sufficient to (1) cover the additional taxes that would be assessed by counting the judgment in the total estate and (2) leave the estate with the $173,644 it paid in tax because the $440,000 was recaptured. Based on the apportionment of liability, judgment was ultimately entered against Wells Fargo in the amount of $180,559.80 plus costs and interest.

¶ 9. Wells Fargo appeals and argues: The trustee had no duty to review Erickson's trust document for accuracy; the damage award is speculative; the statute

---

[7] The law firm had been named because another attorney at the firm, John Wilcox, had apparently reviewed the trust document briefly. The court held that Wilcox himself had no liability. Also, the accounting firm was not named in the complaint, but during the trial a dispute arose over the accuracy of its work in preparing Erickson's annual income tax returns and the estate tax return.

of limitations precludes recovery; public policy precludes recovery; and the trial court's determinations are based on insufficient evidence.

## Discussion

### 1. Whether Wells Fargo had a duty to review the trust for accuracy

¶ 10. Whether a legal duty exists and, if so, its scope, are questions of law. *Wisconsin Academy of Sciences, Arts & Letters v. First Wis. Nat'l Bank*, 142 Wis. 2d 750, 754, 419 N.W.2d 301 (Ct. App. 1987). Generally, a trustee's duties are defined by the trust document. *See Saros v. Carlson*, 244 Wis. 84, 88, 11 N.W.2d 676 (1943). Wells Fargo contends it had no duty to examine the document for accuracy because the duty of review is not included in the trust document. We disagree. Assuming without deciding that Wells Fargo had no duty originally, it created the duty itself. "Wisconsin has long recognized that liability may be imposed on one who, having no duty to act, gratuitously undertakes to act and does so negligently." *Nischke v. Farmers & Merchants Bank & Trust*, 187 Wis. 2d 96, 113, 522 N.W.2d 542 (Ct. App. 1994). At a minimum, when Wells Fargo decided it should notify Duplessie of the missing provisions, it demonstrated an assumed duty of review.[8]

---

[8] We further note that Wells Fargo represented that it had special knowledge in estate planning and estate tax reduction. Consistent with this representation, Wells Fargo would have been wise to verify whether the trust document adequately reflected the bank's promises.

233

¶ 11. Wells Fargo counters that in any event it could not have warned Erickson by reviewing the trust and opining on its validity because doing so would have amounted to the unauthorized practice of law. *See, e.g., Green v. Huntington Nat'l Bank*, 212 N.E.2d 585, 587–88 (Ohio 1965) (a bank providing legal advice for estate planning has engaged in the unauthorized practice of law); *Doe v. Condon*, 532 S.E.2d 879, 882 (S.C. 2000) (a paralegal conducting an estate planning workshop where the paralegal would offer estate planning advice without a supervising attorney would be the unauthorized practice of law). Although Wells Fargo's legal premise is sound, it does not apply to circumstances of this case.

¶ 12. In Wisconsin, an individual engages in the unauthorized practice of law when he or she "for compensation or pecuniary reward gives professional legal advice *not incidental to his or her usual or ordinary business* ...." WIS. STAT. § 757.30(2) (emphasis added). In this particular case, Wells Fargo claimed to have expertise in trusts—that this was its "usual or ordinary business." It would likely know, therefore, as part of that business that *Crummey* provisions are required when a donor intends to reduce his or her estate tax and, indeed, Sevig's concerns reveal as much. This language requirement would thus be one of the "easily identifiable impediments or pitfalls" about which a donor should be informed. *See Wisconsin Acad.*, 142 Wis. 2d at 757. As part of Wells Fargo's usual or ordinary business, advising of the need for *Crummey* provisions would not cross the line into the unauthorized practice of law;[9] such advice does not require that

---

[9] Indeed, we note that many professionals, called upon to give what might be considered legal advice, do not necessarily

the bank or trustee draft the trust, but rather only provide information to the donor in advance.

¶ 13. Still, Wells Fargo implicitly argues that the trial court's finding of fact regarding Erickson's primary intent—reducing her estate taxes—was clearly erroneous because the trust document specifically contains language delaying the beneficiaries' access to the corpus. If the finding were erroneous, Hatleberg's case would no longer be tenable. However, the evidence from both sides amply supports the trial court's finding of Erickson's primary intent. Therefore, we are less concerned with the actual trust document because the issue is not so much what the trust says as what Wells Fargo represented the trust would accomplish.

¶ 14. Wells Fargo further argues that its notification to Duplessie of the error should be sufficient for us to conclude that it fulfilled any duty it assumed. After all, it contends, Duplessie was Erickson's lawyer. However, Wells Fargo ignores the trial court's finding that at the time Wells Fargo notified Duplessie of the error, he no longer had any professional link to Erickson. Sevig testified that he considered Duplessie "out of the loop," and there is no indication Erickson had retained Duplessie for anything other than the initial drafting of the trust. Thus, notice to Duplessie was insufficient to notify Erickson of the problem.

¶ 15. While Wells Fargo may have originally had no duty to review the trust for accuracy, it assumed the duty and found an error in the trust. It notified the original drafter, but this was insufficient because Dup-

---

violate WIS. STAT. § 757.30(2). Accountants, for instance, might give advice relating to tax laws when preparing income tax returns. Real estate brokers prepare documents that have legal effect. In neither case would we normally consider the individuals to be engaged in the unauthorized practice of law.

lessie was no longer Erickson's agent in any capacity. Wells Fargo solicited Erickson's business and repeatedly informed her it could use the trust to reduce her future estate taxes. Once Wells Fargo realized the trust was insufficient for that purpose, it was negligent in advising Erickson to continue making deposits and assuring her the trust would reduce her estate taxes.

¶ 16. We do not intend this decision to be construed as placing trustees in the position of lawyers, bound to review documents for particular nuanced problems. Wells Fargo's duties and liabilities result from the peculiar facts of this case—Wells Fargo's solicitation of Erickson, its self-represented expertise in estate planning, and its continued insistence and reassurance that Erickson could continue gifting to the trust to reduce her taxes, even after it was aware of a problem that had not been remedied.

### 2. Whether the damage award is proper

¶ 17. Whether the trial court applied a proper legal standard in determining damages is a question of law that we review de novo. *Jauquet Lumber Co. v. Kolbe & Kolbe Millwork Co.*, 164 Wis. 2d 689, 703, 476 N.W.2d 305 (Ct. App. 1991). The trial court's findings of fact regarding damages will not be upset by this court unless clearly erroneous. *Id.*

¶ 18. We note first that the estate had Elisabeth Barnes, a certified public accountant, calculate the damages. Barnes had prepared the estate's tax return. She concluded that if the estate won a judgment, it would have to file an amended tax return to reflect the amount as an asset. However, after paying the taxes,

236

there would have to be a remainder from the judgment of $173,644, the amount paid out in taxes in the first place. Based on this information, Barnes calculated the amount a judgment would have to be to both settle the new tax liability and return the first tax payment.[10]

¶ 19. Wells Fargo does not take issue with Barnes' calculations.[11] Rather, it raises several legal arguments, including the binding effect of an estate closing letter on the IRS, a statute of limitations defense against the IRS, and the speculative nature of the award. With regard to speculation, we conclude that the damages in this case are not based on the mere possibility of future harm but rather are based on an articulable application of the tax laws to arrive at a concrete sum.[12]

---

[10] Barnes also made calculations regarding interest penalties the IRS would charge, but the trial court decided they were too speculative because Barnes could not specify exactly what interest rate the IRS was likely to use from quarter to quarter.

[11] Wells Fargo claims Barnes' statement that there would be an amended tax return was made without citation to legal authority. However, Wells Fargo pointed neither us nor the trial court to any contrary evidence, and the trial court was therefore entitled to rely accept Barnes' statement.

[12] It appears that Wells Fargo's remaining arguments were not brought to the trial court's attention. The trial court's decision only addresses the accuracy of Barnes' calculations. For that reason, the record fails to suggest that Wells Fargo first raised these arguments in the trial court. De novo review notwithstanding, we may disregard arguments made for the first time on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). Moreover, even if they were presented to the trial court, Wells Fargo provides no record citations to where these issues were discussed with the court, and we will not search the record to find support for a party's argument. *See Grothe v. Valley Coatings, Inc.*, 2000 WI App 240, ¶ 6, 239 Wis. 2d 406, 620 N.W.2d 463.

### 3. Whether the statute of limitations precludes recovery

■

¶ 20. The statute of limitations on actions based on injury to property is six years. WIS. STAT. § 893.52. Wells Fargo argues that it began to run May 4, 1988, when it notified Duplessie of the lack of *Crummey* provisions, because an attorney is an agent for his or her client and notice to an agent can be imputed to the principal. This argument, however, hinges on the proposition that Duplessie remained Erickson's agent. The trial court explicitly found there was no ongoing agency between Duplessie and Erickson, based in part on Sevig's testimony that Duplessie was "out of the loop." This finding is not clearly erroneous and will not be disturbed. WIS. STAT. § 805.17(2). The first indication either Erickson or the estate had regarding the tax consequences was when Erickson died on November 16, 1998, and Wells Fargo contacted the probate attorney. Thus, the statute of limitations would not expire until November 16, 2004.

### 4. Whether public policy precludes recovery

■

¶ 21. Public policy considerations sometimes preclude liability. *Becker v. State Farm Mut. Auto. Ins. Co.*, 141 Wis. 2d 804, 817–18, 416 N.W.2d 906 (Ct. App. 1987). Policy reasons for not imposing liability despite finding negligence are:

> (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence

should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance for recovery would enter a field that has no sensible or just stopping point.

*Id.* These considerations are addressed on a case-by-case basis.

¶ 22. We conclude that the six criteria above simply do not fit the facts because Wells Fargo held itself out as having special expertise in estate and financial planning, and specifically having knowledge on how to reduce estate taxes. It solicited the Ericksons' business. It suggested the irrevocable trust as the vehicle for reducing the estate taxes. When it discovered there were no *Crummey* provisions, it knew that the estate taxes would not be reduced as planned. Indeed, Sevig notified the probate attorney of the problem almost immediately after Erickson's death. Wells Fargo, however, never notified Erickson of this error but instead assured her all was well with the trust and continued to advise her to make gifts into the trust expressly to reduce her estate taxes. This therefore is not the unusual and extreme situation where a causally negligent tortfeasor should be relieved of liability.[13]

---

[13] Wells Fargo also argues that we should apply the "intervening or superceding cause" doctrine based on "the negligence of the attorneys and accountants advising Mrs. Erickson." We disagree because even if those individuals were somehow also negligent, Wells Fargo simultaneously continued advising Erickson to contribute to the trust, reassuring her everything was in order.

### 5. Whether the trial court's determinations are based on sufficient evidence

¶ 23. Wells Fargo argues that there was insufficient evidence for the trial court to assign any liability. It disputes the trial court's findings that Wells Fargo recommended the estate plan, had expertise in preparing trusts, recommended the trust to reduce estate taxes, and failed to take adequate action to correct the drafting error. Factual findings will not be set aside unless they are clearly erroneous. WIS. STAT. § 805.17(2). We do not consider evidence that might support contrary findings, but search the record for any evidence to support the trial court's actual findings. *In re Estate of Becker*, 76 Wis. 2d 336, 347, 251 N.W.2d 431 (1977).

¶ 24. Wells Fargo contends that there is no evidence it suggested "this" estate plan to Erickson. However, Sevig's letters to Erickson and her husband, as well as Sevig's deposition testimony, demonstrate that in some incarnation, an estate plan involving an irrevocable trust to reduce estate taxes was discussed. Wells Fargo cites no rule requiring written estate planning documents be word-for-word recreations of preliminary discussions in order to prove that it marketed an estate plan calculated to reduce estate taxes.

¶ 25. Wells Fargo claims the evidence shows it only had "expertise in the area of trust administration, which is far different than preparing an irrevocable trust to avoid estate taxes." The issue, however, is not Wells Fargo's actual area of expertise, but rather its claimed area. Moreover, the fact that Sevig realized the

missing *Crummey* provisions were necessary to avoid the estate taxes suggests some knowledge of trust preparation.[14]

¶ 26. Wells Fargo argues that the portion of the evidence the trial court relied on to conclude Sevig recommended the trust for estate tax reduction indicates this information was conveyed after the trust had been drafted. Again, Sevig's letters establish otherwise.

¶ 27. Finally, Wells Fargo asserts that because it notified Duplessie and provided language to fix the error, the court erred by finding that the trustee failed to take any action once it was aware of the problem. First, this argument contradicts the claim that Wells Fargo only knew how to administer trusts, not prepare them. Second, Sevig knew that Duplessie was "out of the loop." Finally, despite the error, the bank never notified Erickson of any difficulties and instead continued to encourage her to contribute to the trust. While Wells Fargo technically took a step to remedy the problem, it took no meaningful action, and therefore Hatleberg, as personal representative, incurred damages.

*By the Court.*—Judgment affirmed.

[14] Sevig testified that he knew what language should be included when preparing an irrevocable trust to reduce estate taxes. Wells Fargo also argued that it could not be considered an expert on the language of trusts because it could not actually draft trusts without practicing law. Whether the actual drafting constitutes practicing law, this argument is suspect in light of Sevig's preparation of additional language to send to Duplessie.