Susan HATLEBERG, Plaintiff-Respondent,

v.

NORWEST BANK Wisconsin, n/k/a Wells Fargo Bank,
Defendants-Appellants-Petitioners.

Supreme Court

*No. 2003AP40. Oral Argument January 7, 2005.
—Decided July 7, 2005.*

2005 WI 109

(Also reported in 700 N.W.2d 15.)

For the defendants-appellants-petitioners there were briefs by *Dennis M. Sullivan, Stephanie Finn* and *Herrick & Hart, S.C.,* Eau Claire, and oral argument by *Dennis M. Sullivan.*

For the plaintiff-respondent there was a brief by *Paul J. Gossens* and *Paul J. Gossens, S.C.,* Wauwatosa, and oral argument by *Paul J. Gossens.*

An amicus curiae brief was filed by *John E. Knight, James E. Bartzen, Kirsten E. Spira* and *Boardman, Suhr, Curry & Field LLP,* Madison, on behalf of the Wisconsin Bankers Association.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Hatleberg v. Norwest Bank Wisconsin,* 2004 WI App 48, 271 Wis. 2d 225, 678 N.W.2d 302. The court of appeals affirmed a judgment of the circuit court for Eau Claire County, Eugene Harrington, Judge, holding Norwest Bank (now known as and hereinafter referred to as Wells Fargo Bank) liable for breach of fiduciary duty in its capacity as trustee of an irrevocable trust set up by Susan Hatleberg's mother, Phyllis Erickson. Wells Fargo appeals, and we affirm on different grounds.

¶ 2. In this case, during its tenure as trustee, Wells Fargo became aware of a defect in a trust that it had not drafted. It did not reveal that defect to the grantor, Erickson. After Erickson's death, the trust was subject to increased tax liability due to the drafting

defect. Hatleberg sued Wells Fargo on behalf of Erickson's estate, alleging several theories of liability. The circuit court concluded that Wells Fargo breached a duty to Erickson, and the court of appeals affirmed.

¶ 3. We reach the following conclusions: First, on the facts of this case, Wells Fargo had no duty to review the Erickson trust to ensure its effectiveness as an instrument to avoid estate taxes. The pertinent facts are that the trust instrument did not assign this responsibility to the trustee and the trustee did not draft the trust. Second, inasmuch as Erickson's estate suffered no physical harm, Wells Fargo was not subject to "Good Samaritan" liability under § 323 of the Restatement (Second) of Torts. Third, Wells Fargo negligently breached a duty to Erickson by continuing to advise her to contribute money to the trust to save estate taxes after it realized the trust was defective. Therefore, we affirm the decision of the court of appeals on different grounds and remand to the circuit court to allow it to determine whether there ought to be any adjustment in damages.

## I. FACTS AND PROCEDURAL POSTURE

¶ 4. The Eau Claire bank now known as Wells Fargo has been called several names. In 1984 it was known as American National Bank and Trust Company. At some point in 1984, Ted Erickson, Phyllis Erickson's husband, met with Dale Sevig, American National's "Vice President and Senior Trust Officer," about estate planning possibilities.[1] On September 6, 1984, Sevig wrote a follow-up letter to Ted Erickson, expressing Sevig's interest in "hopefully help[ing] you with your

---

[1] Sevig stated that one of his roles at the bank was to "solicit . . . business if possible for the bank."

estate and investment planning." Sevig attached extensive documentation and a suggested estate plan for the Ericksons.

¶ 5. Unfortunately, Mr. Erickson died in March 1985. On March 27, 1985, Sevig wrote another letter, this one to Mrs. Erickson, expressing condolences and soliciting her business: "[I]t will be quite easy to set up a trust account so we can help you on bill paying and watching your investments, plus whatever else needs to be done on your financial matters." Sevig's handwritten note on the letter indicates that he called Mrs. Erickson about the letter on April 8, 1985.[2] Eventually, she agreed to set up a revocable trust, with the bank serving as trustee. Sevig set up the revocable trust and handled many of Erickson's finances through it.[3] The revocable trust is not at issue in this case.

¶ 6. Sevig also recommended that Erickson set up an irrevocable trust to reduce her estate taxes by taking advantage of the gift tax exemption.[4] He offered to refer

[2] Wells Fargo's expert admitted that if he had received the letters Sevig sent Erickson, "it would be fair to conclude that the bank is saying 'We have special knowledge to be your estate and investment planner.' "

[3] Despite his repeated contacts with the Ericksons, Sevig claimed that he never held himself out as a financial planner. However, he also testified that he was "probably" Phyllis Erickson's "sole financial advisor." Sevig also stated that the bank's job with respect to Erickson was "investment management . . . where we could suggest various courses of investments for her and carry those out." In her revocable trust, Erickson gave the bank the right to "invest, reinvest, [and] maintain" her investments at the bank's "sole discretion." As Sevig summarized it, "She just plain gave us the right to manage her portfolio as we deemed fit for her."

[4] See 26 U.S.C. § 2503(b) (2000) ("In the case of gifts (other than gifts of future interests in property) made to any person by

her to an attorney he believed to be an expert in estate planning who would draft the irrevocable trust. Erickson decided that she would set up an irrevocable trust, but she wanted her neighbor, Attorney Richard Duplessie, to draft the trust instrument. By his own admission, Duplessie was not an expert in estate planning; nevertheless, Erickson insisted that he draft the trust. Duplessie agreed to do so, essentially copying the instrument from a form book. Duplessie testified that Erickson intended the trust to provide a way for her to reduce her estate taxes.

¶ 7. The parties agree that the trust was defective because it did not contain "*Crummey* provisions."[5] These provisions take their name from the Ninth Circuit's decision in *Crummey v. Commissioner of Internal Revenue*, 397 F.2d 82 (9th Cir. 1968). *Crummey* provisions give the trust beneficiaries present interest gifts, thereby qualifying the gifts for the annual gift tax exclusion. *Id.* at 83–84. In effect, the provisions require the trustee to notify the trust beneficiaries that they have a right of withdrawal of the gifted funds. *See* Mark Bradley, et al., *Eckhardt's Workbook for Wisconsin Estate Planners*, § 8.246 at 85–86 (4th ed. 2003). If the beneficiaries are not given a withdrawal right, the trust deposits do not qualify for the annual gift tax exclusion.

the donor during the calendar year, the first $10,000 of such gifts to such person shall not . . . be included in the total amount of gifts made during such year.").

[5] Wells Fargo asserted at oral argument that this is technically incorrect. Counsel stated that the trust need not contain explicit *Crummey* provisions so long as the beneficiaries are somehow notified of their present interest. For our purposes, the distinction is not relevant because neither action was taken here.

¶ 8. Initially, this error went unnoticed. In 1985 Erickson began to make deposits of $40,000 ($10,000 for each of four family members) annually into the irrevocable trust, and continued to do so for 11 years.

¶ 9. In 1988 Sevig noticed the absence of *Crummey* provisions in the trust during the bank's annual review of the trust provisions. He immediately notified Duplessie via a handwritten note, and attached suggested *Crummey* provisions that would "solve the gift tax exclusion problem." Until that time, Duplessie had never heard of *Crummey* provisions. Duplessie received the communication but informed Sevig that he believed the trust was adequate as written. Duplessie also thought Sevig's concern was irrelevant as it was too late to add the *Crummey* provisions. He "assumed that [because this was an irrevocable trust], that meant you couldn't amend it." Duplessie also (erroneously) believed the trust was "completely funded"; i.e., he believed Erickson would not make any further contributions to the trust principal. The trust was never amended.

¶ 10. Duplessie and Sevig independently admitted that neither one of them informed Erickson of the concerns about her trust. On the contrary, Sevig advised Erickson to continue to make trust contributions, which she did. Sevig stated: "I reviewed your trust for gifts made in 1990 and 1991 as follows: 1. $10,000.00 to Susan on 12–11–90. You can do so again in 1991 for the $10,000.00 annual exclusion. . . . Again, *for estate tax purposes, it makes sense to do the gifts.*" (Emphasis added.) Hatleberg testified that Sevig told Erickson "there [were] absolutely no problems, everything was fine. She had nothing to worry about." In 1995 Sevig advised Erickson that "I think you can afford another round of gifts for the grandchildren."

243

¶ 11. Erickson continued to make gifts each year through tax year 1996. She deposited a total of $440,000 in the trust over the 11–year period between 1985 and 1996. She died in November 1998. Upon her death, Sevig wrote to her probate attorney: "The lack of [ ] *'Crummey'* provision[s] concerns one for her taxable estate." When the estate filed its tax return, it had to recapture the $440,000 in gifts and pay $173,644.00 in additional estate taxes. Hatleberg, who described herself as "stunned" at that development, called Sevig to demand an explanation; Sevig replied, "I prefer not to answer that question with you because I may have to face you in a court some day." When later questioned about what he meant by that, Sevig said, "We can smell these things."

¶ 12. On April 17, 2000, Hatleberg sued Wells Fargo and Duplessie, alleging negligence. Duplessie reached a $173,000 settlement with the estate and has been dismissed from the lawsuit. The remaining parties tried the case without a jury on July 23 and 24, 2002.

¶ 13. The circuit court rendered its decision on August 22, 2002. The court made extensive factual findings, of which the following are excerpts:

> Finding No. 1: "Crucial to [Sevig's] advice was the tax savings that could be achieved for federal estate taxes."
>
> Finding No. 4: "[T]he reduction of the estate tax liability was one of the essential purposes for the trust."
>
> Finding No. 16: "Mr. Sevig and others at [Wells Fargo] discovered the fundamental flaw in the irrevocable trust in 1988. ... [N]either Sevig nor any other representative of [Wells Fargo] did anything to alert Mrs. Erickson or her beneficiaries about the trust document flaws."

¶ 14. Later in its oral decision, the court added, "suffice it to say the primary purpose for the trust was to reduce the Ericksons' estate tax." The court concluded that Wells Fargo "had a duty to Phyllis Erickson and her beneficiaries to furnish complete and accurate information concerning the trust." The court held that Wells Fargo breached that duty, and that damages of $300,933.00 would make the estate whole. It concluded that Wells Fargo was entitled to an offset of approximately $173,000 due to the Duplessie settlement, and therefore owed the estate $127,993.00. Wells Fargo moved for reconsideration, asking, among other things, for the court to make findings assessing the comparative negligence of the parties. The court granted the motion and held that Wells Fargo was 60 percent liable and Duplessie was 40 percent liable. Accordingly, the court increased Wells Fargo's liability to $182,359.31. Wells Fargo appealed, and the court of appeals affirmed. We granted Wells Fargo's petition for review.

## II. STANDARD OF REVIEW

¶ 15. Whether negligence exists is a mixed question of fact and law. *Rockweit v. Senecal,* 197 Wis. 2d 409, 423, 541 N.W.2d 742 (1995). "Whether certain events occurred are questions of historic fact to be determined by the circuit court." *Jorgensen v. Water Works, Inc.,* 2001 WI App 135, ¶ 8, 246 Wis. 2d 614, 630 N.W.2d 230. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the

credibility of the witnesses." Wis. Stat. § 805.17(2) (2001–02).[6] On the other hand, the existence and scope of a duty of care is a pure question of law, which this court reviews de novo. *Stephenson v. Universal Metrics, Inc.,* 2002 WI 30, ¶ 15, 251 Wis. 2d 171, 641 N.W.2d 158. Whether the facts as found show that the defendant violated a particular duty is also a question of law. *Jorgensen,* 246 Wis. 2d 614, ¶ 8.

¶ 16. In reviewing the court's award of damages, an appellate court may not substitute its judgment for the fact finder's. *Teff v. Unity Health Plans Ins. Corp.,* 2003 WI App 115, ¶ 41, 265 Wis. 2d 703, 666 N.W.2d 38. Rather, we simply determine whether the award falls within reasonable limits, viewing the evidence in the light most favorable to the award. *Id.*

### III. NEGLIGENCE

¶ 17. In this case, it is undisputed that Wells Fargo, in its capacity as trustee, paid asset manager, and (arguably) financial planner, owed certain duties to Erickson. Indeed, in Wisconsin, " '[e]veryone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others.' " *Alvarado v. Sersch,,* 2003 WI 55, ¶ 13, 262 Wis. 2d 74, 662 N.W.2d 350 (citing *Palsgraf v. Long Island R.R. Co.,* 162 N.E. 99, 103 (N.Y. 1928) (Andrews, J., dissenting)). In other words, "[e]very person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care." *Alvarado,* 262 Wis. 2d 74, ¶ 14.

---

[6] All references to the Wisconsin Statutes are to the 2001–02 edition unless otherwise indicated.

¶ 18. We must decide the scope of Wells Fargo's duties to Erickson. We have organized our analysis into three categories: (1) Duties arising in Wells Fargo's undisputed capacity as trustee; (2) Duties arising in Wells Fargo's disputed capacity as financial planner or advisor; and (3) Duty to avoid negligently providing inaccurate information. We address each in turn. Ultimately, we conclude that Wells Fargo violated a duty arising in its capacity as a financial advisor to avoid providing false information to Erickson.

A. Duties Arising in Wells Fargo's Capacity as Trustee

■

¶ 19. The parties, and the court of appeals, focused their analyses on Wells Fargo's duties as a trustee. As the court of appeals correctly noted, generally a trustee's duties are explicitly defined in the trust instrument. *Hatleberg,* 271 Wis. 2d 225, ¶ 10; *see also McGeoch Building Co. v. Dick & Reuteman Co.,* 253 Wis. 166, 175, 33 N.W.2d 252 (1948) ("[T]he instrument creating the trust . . . is to be looked to for stipulations fixing the obligations of the parties"); *Saros v. Carlson,* 244 Wis. 84, 88, 11 N.W.2d 676 (1943) ("It is a trustee's paramount duty to . . . comply with the terms of the trust.").

■

¶ 20. However, the duties of a trustee go beyond the four corners of the trust document. For example, a trustee has the duty to be "vigilant" in guarding the trust's assets. *In re Revocable Trust of McCoy,* 142 Wis. 2d 750, 756, 419 N.W.2d 301 (Ct. App. 1987). The trustee must "warn [the grantor] regarding easily identifiable impediments or pitfalls" that would thwart the grantor's intent. *Id.* at 757. This court has recognized

the trustee's duty to "disclos[e] relevant information." *Hammes v. First Nat'l Bank & Trust Co.,* 79 Wis. 2d 355, 368, 255 N.W.2d 555 (1977).

¶ 21. This court has also held that trustees are fiduciaries, and as such, have a duty to employ "diligence, prudence, and absolute fidelity" in managing a trust. *Sensenbrenner v. Sensenbrenner,* 76 Wis. 2d 625, 635, 252 N.W.2d 47 (1977). Wisconsin has enacted the Uniform Fiduciaries Act, which explicitly defines "fiduciary" to include "a trustee under any trust . . . or any other person acting in a fiduciary capacity for any person, trust, or estate." Wis. Stat. § 112.01(1)(b).

¶ 22. With these background principles in mind, we turn to the parties' arguments.

¶ 23. Hatleberg raises three arguments that Wells Fargo breached a duty in its capacity as Erickson's trustee. First, she argues that Wells Fargo, as trustee, had a duty to review the trust to ensure that it worked for its intended purpose. Second, Hatleberg believes that a duty of notification arose when Wells Fargo discovered the deficiency in the trust. Third, she alleges that Wells Fargo violated its fiduciary duty as trustee.

¶ 24. Hatleberg first argues that because Wells Fargo held itself out as possessing special expertise in trust planning and management, it owed Erickson a duty to review the trust to ensure that it would perform its intended purpose. The court of appeals did not directly decide this question; it "disagree[d]" with Wells Fargo's contention that it had no duty to examine the document for accuracy, *Hatleberg,* 271 Wis. 2d 225, ¶ 10, but later noted that "Wells Fargo may have originally had no duty to review the trust for accuracy . . . ." *Id.,* ¶ 15. Ultimately, it appears the court

"[a]ssum[ed] without deciding that Wells Fargo had no duty originally, [but] it created the duty itself." *Id.,* ¶ 10.

■

¶ 25. Here, the trust instrument contained no language requiring the trustee to review it for effectiveness. In view of the fact that Wells Fargo did not draft the trust, we have serious reservations about Hatleberg's invitation to impose liability for failing to ensure that the trust worked for its intended tax avoidance purpose. In this case, Wells Fargo was involved in Erickson's estate and financial planning from the beginning, and had at the very least a general idea as to her intentions. Some trustees, however, might not be aware of the ultimate purposes of particular trusts. Their activities might be limited to safeguarding a trust's assets and distributing the assets to the beneficiaries. We are reluctant to impose liability on a trustee for not discovering and correcting a defect in a trust resulting from negligence by an unaffiliated drafter, unless that responsibility was assumed by contract. We therefore decline to impose a general duty to review a trust document drafted by another and draw legal conclusions as to its effectiveness.

¶ 26. We turn now to Hatleberg's second argument. The parties, and the court of appeals, focused on Hatleberg's contention that when Wells Fargo discovered that the trust was defective, it should have notified her. Hatleberg relies on the Restatement (Second) of Torts § 323, commonly known as the "Good Samaritan" provision. It provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or

things, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if

 (a) his failure to exercise such care increases the risk of such harm, or

 (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1976) (emphasis added).

¶ 27. On its face, this provision requires that the plaintiff suffered "physical harm" to her person or property. Hatleberg argues that Erickson's estate "suffered real physical harm by having its assets reduced." The court of appeals appears to have accepted Hatleberg's argument, but did not specifically cite the Restatement; instead, it relied on *Nischke v. Farmers & Merchants Bank & Trust,* 187 Wis. 2d 96, 522 N.W.2d 542 (Ct. App. 1994). In turn, the *Nischke* court directly relied on the Restatement. It stated: "Wisconsin has long recognized that liability may be imposed on one who, having no duty to act, gratuitously undertakes to act and does so negligently." *Id.* at 113. *Nischke* then cited and quoted the Restatement.

¶ 28. In *Nischke,* the "physical harm" to be remedied was soil and water contamination caused by a leaking underground gasoline storage tank. 187 Wis. 2d at 102. Here, the only harm is the reduction of the estate's assets. Despite the voluminous number of cases applying this section of the Restatement, we have found no cases—and Hatleberg has not cited any—holding that purely economic harm satisfies the "physical harm" requirement. On the contrary, the authority is unani-

mous: the Good Samaritan provision of the Restatement does not apply to "economic harm arising out of an alleged abuse of a contractual relationship." *Love v. United States,* 915 F.2d 1242, 1248 (9th Cir. 1990); *see also Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp.,* 626 F.2d 280, 287–88 (3d Cir. 1980) ("Neither the rule nor its accompanying commentary and illustrations extends liability for negligence to encompass economic losses"); *Oregon Laborers-Employers Health & Welfare Trust v. Philip Morris, Inc.,* 17 F. Supp. 2d 1170, 1183 (D. Or. 1998) ("[P]hysical harm is a requisite element of a claim for breach of an assumed duty"); *Nat'l Crane Corp. v. Ohio Steel Tube Co.,* 332 N.W.2d 39, 43 (Neb. 1983); *Carlotti v. Employees of Gen. Elec. Fed. Credit Union No. 1161,* 717 A.2d 564, 566–67 (Pa. Super. Ct. 1998). We discern no justification to depart here from the established interpretation. Purely financial harm does not equal physical harm. We decline to extend the Good Samaritan rule to nonphysical harm, and withdraw any language to the contrary in the court of appeals' opinion.

¶ 29. Finally, in her third argument, Hatleberg alleges that, as the trustee, Wells Fargo acted as a fiduciary, and had a duty to provide Erickson with information relevant to trust administration—specifically, its knowledge that the trust was defective due to the lack of *Crummey* provisions.

■■■

¶ 30. Wells Fargo disputes that it had any such duty, but argues that even if it did have a duty to disclose the information about the lack of *Crummey* provisions, it adequately satisfied its obligation by disclosing the information to the trust drafter, Attorney Duplessie. Wells Fargo argues that Duplessie was Erickson's agent for purposes of the irrevocable trust.

The parties dispute the facts relating to Duplessie's status (or lack thereof) as Erickson's agent. The circuit court made no factual findings about Duplessie's post-drafting relationship with Erickson. As a matter of course, this court is not qualified to make findings of fact. *See Wurtz v. Fleischman,* 97 Wis. 2d 100, 108, 293 N.W.2d 155 (1980). Accordingly, we could remand for further factual findings. However, in light of our conclusion in Part III.C., *infra,* we need not decide whether the notice to Duplessie satisfied Wells Fargo's fiduciary duty to "disclose relevant information." Therefore, the need for a remand on those grounds is obviated.

B. Duties Arising in Wells Fargo's Capacity as Financial Advisor

¶ 31. Hatleberg argues that Wells Fargo held itself out as an expert in financial planning, and that it committed professional negligence by failing to inform her of the problems with the trust. As a threshold matter, Wells Fargo disputes the contention that it was Erickson's "financial planner," alleging instead that it was only her "investment planner." On the facts here, we fail to see how the label pinned on the bank would include or exclude the bank from concern about the tax consequences flowing from its management of Erickson's money. The facts show that, by his own admission, Wells Fargo's employee, Sevig, deliberately solicited Erickson's business and extensively managed her financial affairs. Indeed, Wells Fargo's own expert admitted at trial that if he had been on the receiving end of Sevig's solicitations, he would have concluded that Wells Fargo wanted to be his "investment planner."

¶ 32. Whether Wells Fargo styles itself an "investment planner," "financial planner," or "financial advi-

sor," it bears responsibility for its actions. A fiduciary duty may arise in these circumstances. *See Merrill Lynch v. Boeck,* 127 Wis. 2d 127, 136, 377 N.W.2d 605 (1985) ("A fiduciary relationship arises from a formal commitment to act for the benefit of another . . . or from special circumstances from which the law will assume an obligation to act for another's benefit."). In determining whether a fiduciary relationship has arisen, courts consider a variety of factors, including whether there is dependence and inequality based on weakness of age or mental strength, lack of business intelligence, inferior knowledge of facts involved, or other conditions giving one side an advantage over the other. *Prod. Credit Ass'n of Lancaster v. Croft,* 143 Wis. 2d 746, 755–56, 423 N.W.2d 544 (Ct. App. 1988). Wells Fargo admitted at oral argument that it owed a fiduciary duty to Erickson, and that that duty required it to furnish complete and accurate information to the grantor. Again, however, it argues that it satisfied the duty to Erickson by notifying Duplessie of the problem. For the same reason discussed above, we decline to determine whether notice to Duplessie satisfied Wells Fargo's obligation to Erickson to disclose information about the defect.

¶ 33. Instead, we turn to Hatleberg's final argument, which definitively settles this case.

C. Duty to Avoid Negligently Providing Information

¶ 34. Even if we accept, *arguendo,* Wells Fargo's arguments that its notice to Duplessie constituted notice to Erickson, we still must address the fact that Sevig continued to advise Erickson to contribute money to the trust to save estate taxes after he knew the trust was defective.

¶ 35. Wisconsin courts have frequently held that claims for professional malpractice lie in tort. *See, e.g., Milwaukee County v. Schmidt, Garden & Erikson,* 43 Wis. 2d 445, 452–53, 168 N.W.2d 559 (1969) (architects); *Smith v. Long,* 178 Wis. 2d 797, 802, 505 N.W.2d 429 (Ct. App. 1993) (lawyers); *Milwaukee Partners v. Collins Engineers, Inc.,* 169 Wis. 2d 355, 363, 485 N.W.2d 274 (Ct. App. 1992) (engineers).

¶ 36. Wells Fargo admitted at oral argument that it had a professional duty to furnish complete and accurate information to Erickson. We need not go that far. This is not a "duty to disclose" case.[7]

¶ 37. In this case, despite its knowledge of the problem with the trust, Wells Fargo assured Erickson that "she had nothing to worry about," and that "for estate tax purposes, it makes sense to do the gifts." These assertions are not disputed. Thus, we decide only whether, by affirmatively making such statements to Erickson, Wells Fargo breached a duty. We conclude that it did.

¶ 38. Wisconsin has adopted Restatement (Second) of Torts § 552. *See Citizens State Bank v. Timm, Schmidt & Co.,* 113 Wis. 2d 376, 385–86, 335 N.W.2d 361 (1983); *Milwaukee Partners,* 169 Wis. 2d at 362–63. That section provides in relevant part:

§ 552. Information Negligently Supplied for the Guidance of Others.

---

[7] In general, "silence, a failure to disclose a fact, is not an intentional misrepresentation unless the seller has a duty to disclose." *Ollerman v. O'Rourke Co.,* 94 Wis. 2d 17, 26, 288 N.W.2d 95 (1980); *see also Tietsworth v. Harley-Davidson, Inc.,* 2004 WI 32, ¶¶ 12, 14, 270 Wis. 2d 146, 677 N.W.2d 233.

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

¶ 39. We conclude that all the elements listed in § 552 are present here. Wells Fargo made false statements to Erickson by telling her that "for estate tax purposes, it makes sense to do the gifts" and that there were "no problems" with her trust *after* it knew of the *Crummey* problem. Wells Fargo made the statements in the course of its business. Wells Fargo intended to guide Erickson's business practices ("it makes sense to do the gifts"). Wells Fargo had a pecuniary interest in the transactions, as it received a fee for serving as the trustee. Erickson relied on Wells Fargo's statements and suffered pecuniary loss in the amount of more than $173,000 in taxes. Accordingly, Wells Fargo had—and breached—a duty under § 552.

¶ 40. Similarly, we have no difficulty concluding that Wells Fargo's statements to Erickson are negligent misrepresentations under Wisconsin common law.[8] The tort of negligent misrepresentation has four elements. *Gorton v. Am. Cyanamid Co.*, 194 Wis. 2d 203, 223, 533 N.W.2d 746 (1995). They are:

(1) a duty of care or voluntary assumption of a duty on the part of the defendant; (2) a breach of that duty, i.e., failure to exercise ordinary care in making the repre-

[8] Indeed, it is not impossible to view the bank's representations to Erickson as intentional misrepresentations.

sentation or in ascertaining the facts; (3) a causal link between the conduct and the injury; and (4) actual loss or damage as a result of the injury.

*Id.; see also* Wis JI—Civil 2403.

¶ 41. Wells Fargo's conduct satisfies all these elements. We have already discussed Wells Fargo's potential duty under various theories: its duty as trustee, its duty as financial planner or advisor, and its duty under the Restatement (Second) of Torts to avoid negligent misrepresentations. Under any of these theories, Wells Fargo had a duty to ensure that the information it actually provided to Erickson was correct. Wells Fargo breached that duty by failing to exercise ordinary care; it told Erickson to continue contributing to the trust even though it knew the trust was defective for her objective. Finally, both the causal link and resulting injury are clear; Erickson's estate paid increased taxes due to Wells Fargo's failure to inform her of the deficiencies. Had it told her of the problem, she could have remedied it in part by giving the beneficiaries a present interest in future gifts or by setting up a new trust.

¶ 42. As a matter of law, we conclude that, because Wells Fargo held itself out as an expert in managing Erickson's finances, it had a duty to avoid providing false information to its client. It breached that duty, and we therefore affirm the court of appeals.

¶ 43. Our holding should not be interpreted as encouraging trustees and financial professionals to remain silent rather than risk providing false information to their clients. As we have recognized, trustees have a duty to disclose "relevant information." *Hammes,* 79 Wis. 2d at 368.

256

## IV. DAMAGES

¶ 44. As we have noted, the circuit court apportioned the damages, finding Wells Fargo 60 percent liable and Duplessie 40 percent liable. Wells Fargo does not challenge that finding on appeal, and we do not disturb it. However, our holding in this case is that Wells Fargo's liability does not date back to its original receipt of the trust document in 1985, but began when it first negligently misrepresented to Erickson that she should continue making contributions to the trust. This occurred in 1988, three years after the trust's creation. In light of this change from the circuit court's and court of appeals' holdings in this case, we remand this case to the circuit court to allow it to determine whether there ought to be any adjustment in damages.

## V. CONCLUSION

¶ 45. In summary, we reach the following conclusions: First, on the facts of this case, Wells Fargo had no duty to review the trust to ensure its effectiveness as an instrument to avoid estate taxes. Second, inasmuch as Erickson's estate suffered no physical harm, Wells Fargo was not subject to "Good Samaritan" liability under the Restatement (Second) of Torts. Third, Wells Fargo negligently breached a duty to Erickson by continuing to advise her to contribute money to the trust to save estate taxes after it realized the trust was defective. Therefore, we ultimately affirm the decision of the court of appeals. We remand to the circuit court to allow it to determine whether there ought to be any adjustment of damages, consistent with our holding.

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded.